**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

DON GIBSON,                                          :

                                Plaintiff,

   -vs-

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,
                               Defendant.             :

Case No. 3:06-cv-140

District Judge Thomas M. Rose
Chief Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

       Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

       Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. §423.  To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations.  20 C.F.R. §404.1520 .  First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled.  Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments;  if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment;  if not, the claimant is found not disabled.  Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform.  *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

        Plaintiff filed an application for SSD on October 2, 2002, alleging disability from December 31, 2001, due to heart, neck, back, knees, and stomach impairments.  (Tr. 180-83). Plaintiff's application was denied initially and on reconsideration. (Tr. 145-49; 151-53).  A hearing and a supplemental hearing were held before Administrative Law Judge Thomas McNichols, (Tr. 50-81; 82-142), who determined that Plaintiff is not disabled.  (Tr. 16-40).  The Appeals Council denied Plaintiff's request for review, (Tr. 9-11), and Judge McNichols' decision became the Commissioner's final decision.

        In determining that Plaintiff is not disabled, Judge McNichols found that Plaintiff met the insured status requirement of the Act through December, 2004.  (Tr. 36, finding 1).  Judge McNichols also found that Plaintiff has severe intermittent back pain due to vertebrogenic disorders

of the lumbar and cervical spines, a history of right knee pain attributed to torn medial meniscus improving since corrective arthroscopic surgery in January, 2005. left lateral epicondylitis, and depression with anxiety but that he does not have an impairment or combination of impairments that meets or equals the Listings. *Id.,* finding 3. Judge McNichols found further that Plaintiff has the residual functional capacity to perform a limited range of light work. *Id.,* finding 5; Tr. 39, finding 7. Judge McNichols then used sections 202.18 and 202.11 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.,* findings 11, 12. Judge McNichols concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 40).

Plaintiff sustained a work-related back injury in October, 1986. See Tr. 400-02. Examining physician Dr. Meelhuysen opined that Plaintiff's diagnosis was residuals of a simple back strain complicating a preexisting intervertebral facet dysfunction, middorsal with associated fibrositis, tension myalgia in same area as well as cervical, secondary deconditioning status of the trunk for strength/endurance and mobility, and functional overlay complicating a personality disorder with anger. *Id.* Dr. Meelhuysen also opined that Plaintiff was able to perform light duty jobs. *Id.*

Plaintiff received treatment from Dr. Turner during the period July 11, 1988, to May 24, 1989, for his work-related back injury. (Tr. 408-29). In addition, Plaintiff consulted with neurosurgeon Dr. Duarte whose impression was that Plaintiff had a herniated cervical disc at C6-C7 on the right and chronic lumbosacral muscle strain. *Id.*

In 1990, an MRI of Plaintiff's lumbar spine revealed mild bulging at L4-5 and L5-S1, (Tr. 412), and in June, 1990, a cervical MRI showed mild canal narrowing at C3-4, mild bulging and

4

mild central degenerative spondylosis and bulging at C4-5 with minimal changes at C5-6. (Tr. 411).

Plaintiff has a history of diabetes mellitus type II since at least 1992. See Tr. 435-37.

Plaintiff was hospitalized in January, 1996, after complaining of chest tightness. (Tr. 537-49). Plaintiff was evaluated for possible myocardial infarction and discharged with the diagnosis of acute chest pain. *Id.* Plaintiff again received hospital treatment for complaints of chest pain in January, 1997, and October, 1997. (Tr. 550-70).

A February, 2001, exercise isotope scan revealed no evidence of stress-induced ischemia, frequent premature ventricular contractions, and a prominent right ventricle. (Tr. 627). An echocardiogram performed in February, 2001, revealed mild left ventricular hypertrophy, mild aortic valve leaflet thickening, no mitral stenosis or prolapse, and mild tricuspid regurgitation. (Tr. 628).

Examining physician Dr. Danopulos reported on November 21, 2002, that Plaintiff moved in the exam room freely, that his lungs were clear, that his upper extremities had full ranges of motion, both his knees revealed painful and restricted motions, and both shoulders and elbows revealed painful but normal motions. (Tr. 248-58). Dr. Danopulos also reported that there were no trophic changes in Plaintiff's lower extremities, that he had a normal gait, cervical spine motions were painful, lateral motions were restricted, paravertebral muscles were soft and painless to palpation and pressure, bilateral straight leg raising was positive at 40 degrees, squatting and arising were normal, LS spine motions were normal and painless, toe and heel gait were normal, and that there was no evidence of nerve root compression or peripheral neuropathy. *Id.* Dr. Danopulos noted that there was no atrophy, normal muscle strength, normal sensory examination, and normal reflexes. *Id.* Dr. Danopulos also noted that right knee x-rays revealed mild narrowing of the medial

joint space, LS spine x-rays revealed degenerative changes, and the objective findings were lumbar spine arthritis, rule out cervical spine arthritis, right knee arthritis, bilateral shoulder and elbow arthralgias, well controlled hypertension, and history of extra systoles which could not be documented on this examination. *Id.* Dr. Danopulos opined that Plaintiff's ability to do any work related activities was mainly affected and restricted by his lumbar spine and right knee conditions. *Id.*

A November 22, 2002, MRI of Plaintiff's right knee revealed a complex tear involving the posterior horn of the medial meniscus with an associated large knee joint effusion and prepatellar bursitis. (Tr. 399). Plaintiff received conservative treatment for his knee impairment and in January, 2003, orthopedic surgeon Dr. Urse noted that Plaintiff's right knee had a small effusion, a decreased range of motion, and that there was slight atrophy of the quadriceps on the right. (Tr. 443-44). Dr. Urse also noted that conservative treatment had failed and he recommended that Plaintiff have arthroscopic surgery of the right knee. *Id.*

Examining psychologist Dr. McIntosh reported on February 12, 2003, that Plaintiff had been treated for depression over the past several years, that he left school in the 9th grade, that he drank alcohol to excess when he was young and quit drinking about 8 years ago, and that he maintained a sad and tearful affect throughout the evaluation. (Tr. 266-70). Dr. McIntosh also reported that Plaintiff's overall mood was depressed, that he cried whenever his financial and health difficulties were being discussed, he exhibited no specific signs of anxiety, he was oriented, his recent and remote memory was fairly good, and that his speech was normal. *Id.* Dr. McIntosh noted that Plaintiff was neither preoccupied or obsessed, did not display distrustfulness or suspiciousness, had a moderated degree of insight, and that he reported symptoms of major depression that had been

6

present to some extent over the last two years since he became disabled and unable to work. *Id.* Dr. McIntosh also noted that Plaintiff's diagnosis was major depression, single episode and moderate and he assigned Plaintiff a GAF of 52. *Id.* Dr. McIntosh opined that Plaintiff's ability to understand, remember, and carry out one and two-step job instructions appeared to be mildly to moderately impaired, his ability to interact with others was moderately to severely impaired, his ability to withstand the stress and pressure of day-to-day work activity appeared to be severely limited, and his ability to maintain concentration and attention sufficient for simple, repetitive tasks was mildly to moderately impaired. *Id.*

Plaintiff has received treatment from cardiologist Dr. Young during the period of at least February 20, 2001, to March 17, 2003. (Tr. 287-94). On March 17, 2003, Dr. Young noted that Plaintiff had occasional premature ventricular complexes with a previous history of palpitations, resolved, mild left ventricular, right ventricular, and right atrial dilatation with a normal ejection fraction, hypertension with borderline control, abnormal Thallium scan with a fixed inferior defect, abnormal resting EKG demonstrating poor R-wave progression, and hyperlipidemia with borderline control. *Id.*

In October and November, 2003, neurosurgeon Dr. West and hand surgeon Dr. Barre diagnosed Plaintiff with carpal tunnel syndrome on the right. (Tr. 361; 363-64).

Dr. Stratton of the Pain Evaluation and Management Center of Ohio has been treating Plaintiff since at least December 12, 2000, through at least March, 2005. (Tr. 293-357; 365-98; 667-704). During the time that Dr. Stratton treated Plaintiff, he noted that Plaintiff had muscle spasms and swelling, joint swelling and pain, muscle aches and weakness, loss of sensation, weakness, tenderness of the lumbar spine; limited ranges of motion, and muscle atrophy. *Id.* Dr. Stratton

7

reported on November 12, 2003, that Plaintiff was able to stand/walk for 3-4 hours in an 8-hour day and for 30 to 34 minutes without interruption, sit for 4 hours in an 8-hour day and for 1 hour without interruption, lift up to 10 pounds occasionally and up to 5 pounds frequently, but that he was not able to carry. *Id.* Dr. Stratton also opined that Plaintiff was unemployable. *Id.* On April 20, 2004, Dr. Stratton reported that Plaintiff's diagnoses were lumbar strain and sprain, cervical strain and sprain, chronic pain syndrome, carpal tunnel syndrome, bilateral, tear of posterior horn of the medial meniscus right knee with effusion, cervical disc bulging and degenerative spondylosis, and degenerative disc disease L4-5 and L5-S1. (Tr. 517-21). Dr. Stratton also reported that Plaintiff was able to occasionally lift/carry up to 10 pounds, stand/walk for 30-60 minutes during an eight-hour workday, and sit for 3 hours during an eight hour workday and for 1 hour without interruption. *Id.* Dr. Stratton opined that Plaintiff was not capable of performing sedentary, light, or medium work. *Id.*

A December 3, 2004, MRI of Plaintiff's thoracic and lumbar spines revealed some mild disc bulging at T8-T9, some mild disc space loss at other levels, mild to moderate degenerative disc disease present at L1-L2, L2-L3, and L5-S1, and mild to moderate bilateral foraminal narrowing at L5-S1. (Tr. 522).

Examining physician Dr. Vitols reported on January 6 and 26, 2005, that Plaintiff was able to perform tandem walking, able to walk on heels and toes, had a normal sensory function, and a full range of motion of his neck. (Tr. 523-36). Dr. Vitols also reported that Plaintiff had an antalgic gait, favored the right lower extremity, used a cane for assistive ambulation which was obligatory for the most part due to a history of buckling of the right knee, had moderate myospasm and painfully restricted range of motion in the cervical spine, tenderness of the left elbow with

8

reproduction of pain with left wrist extension, some relative loss of strength associated with elbow pain and not a motor deficit, and that there was no atrophy of the upper extremities. *Id.* Dr. Vitols noted that there was moderate myospasm to palpation of the dorsolumbar spine, generalized lumbosacral pain to palpation, restricted painful range of motion in all planes of the lumbar spine, medial joint line pain of the left knee, 2/6 effusion with no instabilities, a painful flexion arc, and decreased strength in the right thigh as compared to the left. *Id.* Dr. Vitols also noted that a lumbar spine MRI revealed mild to moderate degenerative disc disease at multiple levels with bilateral foraminal narrowing at L5-S1. *Id.* Dr. Vitols opined that Plaintiff's diagnoses were degenerative disc disease of the thoracic and lumbar spines, arthritis and torn meniscus right knee, left lateral epicondylitis, chronic cervical sprain and strain, and hypertension as per history. *Id.* Dr. Vitols also opined that Plaintiff's work capabilities and tasks of daily living were affected by his impairments, that he was able to lift/carry up to 5 pounds frequently and 10 pounds occasionally, stand/walk for 4 hours in an 8-hour day and for 1 hour without interruption, and sit for 6 hours in an 8-hour day and for 1 hour without interruption. *Id.*

Plaintiff continued to receive treatment from Dr. Urse, see, *e.g.,* Tr. 629-30, and in January, 2005, Plaintiff underwent a diagnostic and surgical arthroscopy of the right knee with a partial medial meniscectomy and debridement of articular cartilage of the medial femoral condyle which Dr. Urse performed. (Tr. 610-22).

Dr. Striebel has been Plaintiff's treating physician since at least January, 2002, continuing through at least February, 2005. (Tr. 450-516; 642-66; 706-08). On May 13, 2003, Dr. Striebel reported that Plaintiff's diagnoses were depression, hyperlipidemia, GERD, hypertension, coronary artery disease, palpitations, and right knee and back pain. *Id.*

9

Plaintiff began receiving mental health treatment at Advanced Therapeutic Services in December, 2004. (Tr. 709-23). At the time of Plaintiff's initial evaluation, it was noted that Plaintiff's diagnosis was mood disorder due to chronic pain from a back injury, that he appeared to be depressed, angry, and tearful, that his speech was normal, and that his thought content was logical. *Id.* On April 28, 2005, psychiatrist Dr. Glass of Advanced Therapeutic Services reported that Plaintiff's abilities to perform work-related mental activities were moderately to moderately-severely impaired, that his diagnosis was major depression with anxiety, that his prognosis was guarded, his emotional symptoms were aggravated by his chronic pain, and that the medication he was taking had caused some sexual dysfunction. *Id.*

A medical advisor (MA) testified at the hearing that Plaintiff had degenerative disc disease in his lumbar and thoracic spines and a history of a knee impairment. (Tr. 119-33). The MA also testified that Plaintiff did not meet or equal the Listings. *Id.* The MA testified further that Plaintiff should not lift more than 10 pounds occasionally and less than 10 pounds frequently, that he be allowed to sit six hours out of an eight-hour day and stand or walk two hours out of an 8-hour day. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to find that he is capable of performing, at most, sedentary work, rejecting Dr. Stratton's opinion, failing to find that his elbow, shoulder, and carpal tunnel impairments are severe, failing to find him credible, and by relying on the VE's testimony in finding that his is not disabled because that testimony was in response to an improper hypothetical question. (Doc. 4).

This Court will first address Plaintiff's second Error. In support of that error, Plaintiff essentially agues that the Commissioner erred by failing to give the appropriate evidentiary

weight to treating physician Dr. Stratton's opinion.

A treating physician's opinion is entitled to weight substantially greater than that of either a nonexamining medical advisor or an examining physician who saw a claimant only once. *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983). A treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is

not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters v. Commissioner of Social Security,* 127 F.3d 525 (6th Cir. 1997).

Judge McNichols rejected Dr. Stratton's opinion that Plaintiff is disabled on the basis that it is not supported by clinical findings and is inconsistent with other evidence of record. (Tr. 34). This Court does not agree.

Dr. Stratton has been Plaintiff's long-term treating physician Over time, Dr. Stratton has noted that Plaintiff had muscle spasms, muscle swelling, joint swelling, joint pain, muscle weakness, loss of sensation, tenderness on palpation, limited ranges of motion, and muscle atrophy. In addition, the objective medical tests of record, specifically MRIs, revealed bulging disks, canal narrowing, degenerative changes, and foraminal narrowing. Further, Dr. Vitols' reported finding are consistent with Dr. Stratton's findings including an antalgic gait, muscle spasms, and painful and restricted ranges of motion.

Under these facts, this Court concludes that the Commissioner erred by rejecting Dr. Stratton's opinion that Plaintiff is disabled. Accordingly, the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health*

*and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that all of the factual issues have been resolved and that the record adequately establishes Plaintiff's entitlement to benefits. Specifically, as the Court noted above, Plaintiff's long-term treating physician, Dr. Stratton, opined that Plaintiff is disabled. Dr. Stratton's clinical records document objective findings which support his opinion and his opinion is supported by the objective test results of record. Finally, Dr. Stratton's opinion is consistent with the findings reported by Dr. Vitols.

In addition, the Court notes that it is at best questionable as to whether Plaintiff is capable of performing sedentary work. In addition to Dr. Stratton's opinion as to Plaintiff's residual functional capacity, the MA's testimony indicates that Plaintiff is capable of performing, at best, sedentary work. The Court notes that Plaintiff attained the age of 50 in August, 2002, only a few months after his alleged onset date. In addition, Plaintiff has a limited education and has no transferable skills. (Tr. 138). in considering Plaintiff's age, education, and work background, section 201.10 of the Grid would direct a finding of disabled.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled and therefore not entitled to benefits under the Act be reversed. It is further recommended that this matter be remanded to the Commissioner for the payment of benefits consistent with the Act.

December 11, 2006.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).